IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLA A. MOORE, | ) | CASE NO. 5:13CV1705 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Carla A. Moore ("Plaintiff" or "Moore") challenges the final decision of Defendant Carolyn M. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act . Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED.**

### I.  Procedural History

Moore filed applications for SSI and DIB on June 8, 2010, alleging a disability onset date of January 16, 2009. Tr. 115-27. She alleged disability based on diabetes, hypertension, peptic ulcer disease, bipolar disorder, and injuries to her neck and back. Tr. 167. Moore's application was denied by the state agency initially (Tr. 58-64) and on reconsideration (Tr. 72-85). On April

13, 2012, a hearing was held before Administrative Law Judge ("ALJ") Jeffrey Raeber. Tr. 30-53.

In his May 31, 2012, decision, the ALJ determined that Moore was capable of performing her past relevant work as a Switchboard Operator and, therefore, she was not disabled. Tr. 22. Moore requested review of the ALJ's decision by the Appeals Council. Tr. 6. On June 10, 2013, the Appeals Council denied Moore's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Pertinent Medical History[1]

#### 1. Treatment Notes

**Trinity Health System.** On February 23, 2009, Moore was seen in the emergency room at Trinity Health System with complaints of depression. Tr. 1043. Moore reported that she had suicidal ideation the day prior and had taken some pills but her son had stopped her. Id. Moore also reported that she chased her son with a butcher knife. Id., Tr. 375. She was admitted to the mental health facility for a few days for further evaluation of depression and suicidal thoughts. Tr. 374, 1044.

**Jefferson Behavioral Health System.** In May 2009, Moore was seen at the Jefferson Behavioral Health System ("JBHS"). Tr. 276-80. Moore reported that she had been in the Trinity Health Behavioral program for the prior six weeks and had been prescribed medication for her symptoms. Tr. 279. She attended a few counseling sessions at JBHS before moving to

---

[1] Plaintiff only challenges the ALJ's findings with respect to her mental health impairments. Accordingly, only the medical evidence relating to those claims is summarized herein.

2

Akron.  Tr. 274.  Moore was diagnosed with major depressive disorder, single episode, severe, without psychotic features.  Id.

**Portage Path Behavioral Health.**  On September 3, 2009, Moore was initially evaluated at Portage Path Behavioral Health ("PPBH") for depression and mood swings.  Tr. 371.  She reported that she had anxiety attacks, problems with sleep, lack of energy, crying spells, feelings of worthlessness, and difficulty with memory and concentration.  Tr. 371-72.  Moore was diagnosed with major depressive disorder, recurrent, moderate and adjustment disorder with anxiety.  Tr. 380.  Moore participated in group therapy, individual therapy, and received medication management at PPBH from 2009 through 2012.  Tr. 368-399, 531-617, 657-798, 869-896, 963-1022.  Moore received individual therapy from Sheri Walters, Licensed Professional Counselor and Ramone Ford, Ph.D.  See e.g., Tr. 560-616, 974-78.  Moore saw Sameera Khan, M.D., for medication management during the time she was engaged in therapy.  See e.g., Tr. 398, 531-32, 679-81.

On September 8, 2009, Moore reported that she had experienced depression for the last five years but that it had gotten worse after she lost her job as a switchboard operator in January 2009.  Tr. 369.  She was prescribed Effexor for her depression and Trazadone to help her with her sleep problems.  Tr. 370.  In October and December 2009, Moore described her mood as mildly depressed or stable.  Tr. 584-585, 588.  In November 2009, Moore stated that her mood had improved with her medications.  Tr. 586.

In January 2010, Moore was noted to be either stable or moderately depressed.  Tr. 581-83.  From February 2010 through August 2010, individual therapy notes described Moore's mood as either mildly depressed or fairly stable.  Tr. 535, 559-580.  On February 16, 2010, Moore reported that she was doing "very well" on her medications.  Tr. 391.  At a subsequent

3

visit in March 2010, Moore stated that her son passed away in February 2010. Tr. 386. Despite the stress associated with this event, it was reported that Moore was "as stable as could be under the circumstances." Id. On March 24, 2010, Moore reported she was "mildly depressed" and grieving. Tr. 576, 739. On June 8, 2010, Moore rated her depression as a 0/10 and her anxiety as a 2/10. Tr. 382. In August 2010, Moore rated her depression at a 2/10 and her anxiety at a 4/10. Tr. 532. On November 10, 2010, Moore described her mood as "very good." Tr. 684. The next day, Moore rated her depression and anxiety as a 5/10 stating that she was having a hard time with the holidays due to the loss of her son. Tr. 679. In December 2010, Moore reported that she was having a difficult time with concentration and focus. Tr. 677. She stated that she thought those problems were related to her grief over losing her son. Id.

In February 2011, Moore rated her depression at a 5/10 and her anxiety at a 6/10. Tr. 871. She stated that there was a lot of tension in the shelter she was residing in and she was missing her son. Id. On April 26, 2011, Moore described her mood as "great" and rated her depression and anxiety at a 0/10. Tr. 877, 893. Moore also reported that she was going back to the Salvation Army to get more experience, she was taking a computer class, and she had two volunteer jobs: (1) as a chaperone for homeless people and (2) volunteering her time at the Aeros baseball game. Tr. 893. In May 2011, Moore stated she was doing "very well." Tr. 880. She continued to report her depression at a 0/10 and her anxiety at a 2/10. Tr. 880, 1020. In June 2011, Moore reported that she was working at Goodwill but was overwhelmed and had a hard time concentrating. Tr. 1017. She reported her depression at a 4/10 and her anxiety at an 8/10 but it was noted those ratings were situational based on work issues. Id. In July 2011, Moore reported that she stopped working at Goodwill the previous month because she felt overwhelmed. Tr. 995, 1014. She reported her depression and anxiety at a 2/10. Id. On

4

September 6, 2011, Moore reported that was stressed out and unable to concentrate and rated her depression and anxiety at a 7/10. Tr. 1011. She stated that she stopped taking Effexor and was now taking Cymbalta but said she was still feeling depressed. Id. It was also reported that she hadn't been attending group therapy. Tr. 1011-12.

Ten days later, Moore reported that, after a change in her medication, she was doing "really well," had fewer racing thoughts, less irritability, and better concentration. Tr. 983. She rated her depression at a 2/10 and her anxiety at a 0/10. Id. On October 18, 2011, Moore rated her depression as a 2/10 and her anxiety as a 0/10. Tr. 980. It was noted in November 2011 that Moore returned to group therapy after an absence. Tr. 978. Moore reported that she was able to assert herself despite her anxiety. Id. In December 2011, it was reported that Moore had "[n]o major presenting problems." Tr. 977.

In January 2012, Moore's mood was described as euthymic. Tr. 974. On February 13, 2012, Moore reported that she will be working with "A.J. Brown (coach)" to help develop new memory connections. Tr. 970. On February 27, 2012, Moore was found to be depressed but stated that she was able to get through the weekend of the anniversary of her son's death. Tr. 965. On March 12, 2012, Moore stated that she had not taken her medication and was feeling depressed. Tr. 963. She also reported that her anxiety was not usually high so she only took her anxiety medication, Vistaril, twice weekly during the day and every night for sleep. Tr. 963.

### B. Medical Opinion Evidence

#### 1. Plaintiff's Treating Sources

**Dr. Ford.** On January 4, 2011, Ramone Ford, Ph.D., clinical supervisor for PPBH, completed a mental status questionnaire (Tr. 799-802) and a daily activities questionnaire (Tr. 803-04) on Moore's behalf. On page one of the mental status questionnaire, Dr. Ford noted that

5

Moore had "no major cognitive problems noted" with regard to concentration, long and short-term memory, abstract reasoning, fund of information, and range of intelligence. Tr. 799. However, on the second page of the mental status questionnaire, Dr. Ford stated that Moore has "poor memory with short-term memory" and "difficulty sustaining attention." Tr. 800. Dr. Ford opined that Moore "would have difficulty with a faster pace of work," but she "could do some repetitive tasks but not without moderate difficulty." Id. In the daily activities questionnaire, Dr. Ford noted that Moore currently lived in a homeless shelter for women due to lack of income. Tr. 803. He further noted that she has a good relationship with her family. Id. Dr. Ford described no difficulties with Moore's daily activities. Tr. 804. He stated that she has had some problems with pace of work during her attempts to return to work. Tr. 803. He noted that her slow pace and lack of motivation might prevent work activities. Id.

**Dr. Khan.** On October 27, 2011, psychiatrist Sameera Khan, M.D., completed a mental assessment of Moore's ability to do work-related activities. Tr. 897-898. Dr. Khan assessed Moore's functional limitations on a five point scale of none, mild, moderate, marked, or extreme. Tr. 897.[2] Dr. Khan opined that Moore exhibited an extreme degree of limitation in her: ability to maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; respond appropriately to customary work pressures; and to perform complex, repetitive, or varied tasks. Tr. 897-98. Dr. Khan further opined that Moore was markedly limited in her: ability to understand, remember, and carry out instructions and her ability to behave in an emotionally stable manner. Id. Finally, Dr. Khan opined that Moore was moderately limited in her: ability to relate to others; daily activities;

---

[2] Moderate is defined as a "significant limitation (i.e., on task 82%-88% in an 8 hr workday day)." Marked is defined as "serious limitation, severely limits ability to function (i.e., on task 48%-82% in an 8 hr work day). Extreme is defined as "major limitation with no useful ability to function (i.e., on task 0%-48% in an 8 hr work day). Tr. 897.

6

sustain a routine without special supervision; respond appropriately to changes in the work setting; and ability to use good judgment.  Id.   At the end of his assessment, Dr. Khan stated that Moore "has shown reduction in depressive symptoms yet has difficulty [with] mood stabilization in high stress situations.  She reported increased anxiety in last workplace setting and low frustration tolerance which caused exacerbation of depressive symptoms."  Tr. 898.

   2.   **State Agency Opinions**

   **Dr. Rivera.**  On August 10, 2010, state agency psychologist, Aracelis Rivera, Psy.D., completed a psychiatric review technique.  Tr. 440-53.  Dr. Rivera opined that Moore is only mildly limited in her:  activities of daily living; maintaining social functioning; and maintaining concentration persistence, or pace.  Tr. 450.  Dr. Rivera further opined that Moore's depression is not severe based on Moore's recent reports rating her depression at a 2/10.  Tr. 452.

   **Dr. Collins.**  Dr. Rivera's findings were affirmed upon reconsideration by another state agency psychologist, Marianne Collins, Ph.D., on February 4, 2011.  Tr. 820.  Dr. Collins noted that, although Moore suffered the loss of her son, treatments notes from PPBH show that she is coping well.  Id.

 C. **Function Report**

   On July 5, 2010, Moore completed a function report indicating that she has no problems with personal care, she prepares her own meals, completes chores, handles her finances, and goes shopping.  Tr. 182-83.  Moore also stated that she walks and uses public transportation daily.  Tr. 183.  She also reported that she listens to music, reads, watches television and movies, attends therapy, goes to church, and attends a weekly social group called Choices.  Tr. 184.  She stated that, if she is depressed or in pain, she has to force herself to go out.  Id.  Moore stated that, although she likes having a schedule, she is fine with changes, she follows instructions very well,

gets along very well with authority figures, and can pay attention for two hours.  Tr. 185-86.  Moore reported she was working part-time and taking a computer class at the library.  Tr. 187.

### D. Testimonial Evidence

#### 1. Moore's Testimony

At the administrative hearing, Moore was represented by counsel and testified that she worked as a switchboard operator for 29 years.  Tr. 36.  Moore stated she was fired from that job for missing too many days due to her diabetic medication, back pain, and depression.  Tr. 36, 42.  Moore testified that she worked for DialAmerica in 2011 but was asked to leave because she wasn't meeting her sales goals.  Tr. 36-37.  Moore testified that her most significant medical problems are her memory loss and fibromyalgia pain.  Tr. 41.  She stated that her memory has gotten worse in the last two years, i.e., 2010 through 2012.  Id.  Moore testified that she did not believe she could perform her past work as a switchboard operator because it was too fast-paced, she is unable to focus, and her typing skills are diminished.  Tr. 46.  Moore stated that it is "very difficult … to even get through the day, let alone try to focus on a job right now."  Tr. 48.

#### 2. Vocational Expert's Testimony

Vocational Expert Alana Kertanic ("VE") testified at the hearing.  Tr. 35, 38-39, 49-50.  The VE testified that Moore's past relevant work as a switchboard operator was semiskilled and performed at a sedentary exertional level.  Tr. 38.  The VE testified that there are no transferable skills from Moore's past work.  Tr. 38-39.  The ALJ then asked the VE to consider a hypothetical individual of Moore's age, education, and work experience who can perform sedentary work but could never climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs; could frequently balance and occasionally stoop; frequently kneel; occasionally crouch; frequently crawl; and could never reach overhead with her left upper

extremity. Tr. 49. The VE testified that such a hypothetical individual could perform Moore's past work. Id.

The ALJ then asked the VE to consider a second hypothetical individual with the following additions from the first: the second individual could frequently handle and finger objects with her left hand; work would be limited to simple, routine, repetitive tasks; and the individual would be limited to a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. Id. The VE testified that the individual would be unable to perform Moore's past work. Id.

Moore's attorney then asked the VE whether, if an individual were absent from work more than three times in a month, that would affect the number of jobs available. Tr. 50. The VE responded that there would be no jobs for such an individual. Id.

### III. Standard for Disability

**A. Initial Disability Determination**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making an initial determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his May 31, 2012, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014. Tr. 12.

2. The claimant has not engaged in substantial gainful activity since January 16, 2009, the alleged onset date.  Tr. 12.

3. The claimant has the following severe impairments: diabetes mellitus, spondylolisthesis with moderately severe facet arthropathy, cervical spinal stenosis, lumbar disc degeneration, and obesity.  Tr. 12.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 14.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds.  In addition, the claimant can only occasionally climb ramps or stairs, stoop and crouch.  Further, the claimant can frequently balance, kneel, and crawl.  However, the claimant can never reach overhead with the left upper extremity.  Tr. 15.

6. The claimant is capable of performing past relevant work as a switchboard operator. This work does not require the performance of work-related activities precluded by the claimant's RFC.  Tr. 22.

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2009, through the date of the decision.  Tr. 22.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council declined review on June 10, 2013.  Tr. 1-5.

### V. Parties' Arguments

Plaintiff argues that the ALJ failed to abide by the treating source rule by not giving good reasons for discounting the opinions of her treating psychiatrists.  Id. at pp. 23-25.  Plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence because it failed to account for her non-exertional limitations, i.e., memory and concentration deficits. Doc. 13, pp. 19-23.  Defendant counters that the ALJ's decision is supported by substantial evidence.  Doc. 14, pp. 6-12.

11

**VI. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A. The ALJ did not violate the treating physician rule**

Moore argues that the ALJ did not abide by the requirements of the treating physician rule. Doc. 13, p. 23. Under the treating physician rule, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §§ 404.1527(d)(2)). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544. In deciding the weight given, the ALJ must consider factors such as: (1) the length of the treatment relationship

and the frequency of the examinations, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d), 416.927(d).  "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting §404.1527(d)(2)).

      The ALJ did not give the opinions of Dr. Ford and Dr. Khan controlling weight because the ALJ found that those opinions were inconsistent with other evidence in the case record.  Moore does not argue that these opinions should have been entitled to controlling weight.  Instead, Moore contends that the ALJ failed to list good reasons for the weight attributed to the opinions of Dr. Ford and Dr. Khan.  The ALJ explained that he gave "little probative weight" to Dr. Ford's opinion because it "is not consistent with the treatment notes…and Ms. Moore's reported daily activities."  Tr. 21.  The ALJ also gave "little probative weight" to Dr. Khan's opinion because it "is not consistent with the record as a whole, the mental health treatment notes or Ms. Moore's reported daily activities and reported levels of functioning."  Id.  In fact, the ALJ concluded that Moore's depression and bipolar disorder were not severe impairments because they "do not cause more than a minimal limitation in [her] ability to perform basic mental work activities…" Tr. 13.

      As set forth above, Dr. Ford completed a mental status questionnaire on January 4, 2011.  Tr. 799-802.  Dr. Ford stated that he treated Moore from August 31, 2010, through December 9, 2010.  Tr. 799.  Dr. Ford stated on page one of the questionnaire that Moore had "no major

13

cognitive problems" with regard to concentration, long and short-term memory, abstract reasoning, fund of information, and range of intelligence. Id. On the second page of the questionnaire, Dr. Ford opined that Moore had poor short-term memory, difficulty sustaining attention, difficulty with fast-paced work, and some difficulty adapting to new situations.[3] Tr. 800. In a daily activities questionnaire filled out the same day,[4] Dr. Ford reported that Moore had no limitations in her activities of daily living. Tr. 804. Dr. Ford also reported that Moore regularly attends appointments with therapists and nurses and is able to grasp cognitive based treatment concepts. Id. Dr. Ford further noted that Moore had no problems with her past employment as a switchboard operator but that she was fired from her job as a telemarketer due to her slow pace. Tr. 803.

On October 27, 2011, Dr. Khan completed a mental assessment of ability to do work-related activities on Moore's behalf. Tr. 897-898. Dr. Khan opined that Moore was either markedly or extremely limited in her: ability to maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; respond appropriately to customary work pressures; perform complex, repetitive, or varied tasks; understand, remember, and carry out instructions; and behave in an emotionally stable manner. Id. Dr. Khan also opined that Moore was moderately limited in her: ability to relate to others; daily activities; ability to sustain a routine without special supervision; respond appropriately to changes in the work setting; and ability to use good judgment. Id. Dr. Khan stated that Moore "has shown reduction in depressive symptoms yet has difficulty [with] mood

---

[3] Clearly Dr. Ford's opinion contained an internal inconsistency between page 1 and 2 with regard to his finding as to Moore's cognitive limitations.

[4] The daily activities questionnaire is erroneously dated January 4, 2010; it appears it was actually filled out on January 4, 2011, like the mental status questionnaire. Tr. 804.

14

stabilization in high stress situations. She reported increased anxiety in last workplace setting and low frustration tolerance which cause exacerbation of depressive symptoms." Tr. 898.

The ALJ noted that the PPBH treatment notes do not support the degree of limitations imposed by Dr. Ford and Dr. Khan. Tr. 21. With respect to Dr. Khan, the ALJ also noted that Khan opined on Moore's condition before treating her and said, "he could not make that leap." Id. Although the PPBH treatment notes reflected a depressed mood on several occasions, the vast majority of treatment notes describe Moore as either mildly depressed or fairly stable.

Despite dealing with the tragedy of losing her son in February 2010, Moore's mood in 2010 was usually noted as stable or only mildly depressed. Tr. 535, 559-580, 739. In June and August 2010, Moore rated her depression as a 0/10 and 2/10 and her anxiety as a 2/10 and 4/10, respectively. In November and December 2010, Moore's depression increased and she indicated she was having a hard time with the holidays due to the loss of her son. Tr. 677, 679. In April and May 2011, Moore rated her depression and anxiety no greater than a 2/10. Tr. 877, 880, 893, 1020. Moore reported an increase in depression and anxiety when working for Goodwill in June of 2011 and stopped working because she stated she felt overwhelmed. Tr. 995, 1014, 1017. After a medication change in September 2011, Moore reported she was doing "really well," had fewer racing thoughts, less irritability, and better concentration. Tr. 983. Moore continued to exhibit only mild depression throughout 2011. Tr. 977-80. Tr. 978. Accordingly, the ALJ's determination that the severe limitations noted in the 2011 opinions of Drs. Ford and Khan are not consistent with the PPBH treatment notes is supported by substantial evidence.

The ALJ also determined that Moore's daily activities belie the severity of limitations imposed by Drs. Khan and Ford. Tr. 21. In July 2010, Moore filled out a function report stating that she had no problems with personal care, preparing meals, completing housework, shopping,

15

and participating in social activities.  Tr. 182-84.  Moore reported that she can finish what she starts, follows instructions "very well," gets along with authority figures "very well," and can pay attention for two hours at a time.  Tr. 185.  This is consistent with Dr. Ford's report where he listed no limitations in Moore's daily activities.  Tr. 804.  Thus, the ALJ's determination that Moore's activities of daily living belie the severity of the limitations imposed by Drs. Kahn and Ford is supported by substantial evidence.

Furthermore, the ALJ gave great weight to the state reviewing psychologists who found that Moore had only mild restrictions in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  Tr. 20.  The state reviewing psychologists concluded that Moore did not have a severe mental health impairment, a determination that was based on the benign treatment notes from PPBH and Moore's own reported symptoms.  Tr. 452, 820.

The ALJ also considered Moore's subjective complaints and found that her allegations of disabling limitations were not credible due to lack of objective support, inconsistencies in Moore's allegations, and Moore's normal activities of daily living.  Tr. 16, 18-19.  The ALJ's credibility assessment is supported by the record.  Although Moore testified that she developed memory problems over the last two years, the ALJ correctly found that there is no objective support for this complaint.  Tr. 18.  Furthermore, the treatment notes from PPBH do not reflect any serious memory problems.  In February 2012, Moore stated she was going to be starting a new therapy program for help with memory, social skills, and overall development and that she would receive help making new memory connections.  Tr. 965-70.  It was frequently reported in the treatment notes that Moore had no problems with her thought process and demonstrated a good understanding throughout the therapy sessions.  See, e.g., Tr. 560-617, 679

16

The ALJ's credibility determinations are entitled to great deference because the ALJ had the "unique opportunity to observe" the witness's demeanor while testifying. *Buxton,* 246 F.3d at 773; *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476; *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531. On appeal, a reviewing court is "limited to evaluating whether or not the ALJ's explanations for [discrediting the witness] are reasonable and supported by substantial evidence in the record." *Jones,* 336 F.3d at 476. An ALJ may reasonably find a claimant less credible where her activities are inconsistent with her allegations. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks."); *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 713 (6th Cir. 1988) ("Additionally, the appellant's own testimony disclosed that he was able to drive an automobile, shop, do housework, visit relatives regularly and babysit his grandson occasionally, read and view television, feed the chickens daily and garden from time to time. After considering the evidence of record, this court concludes that the ALJ's determination that the appellant was not disabled was thus supported by substantial evidence."). The ALJ's explanations for discrediting Moore are reasonable and supported by substantial evidence in the record.

Based on all of the above, the ALJ stated good reasons for discounting the opinions of Drs. Ford and Khan that were sufficiently specific to make clear to any subsequent reviewer the weight given to those opinions and the reason for that weight. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (finding that an ALJ provided good reasons for discounting treating physician opinion where the ALJ's stated reason was brief but reached several of the factors an ALJ must consider when determining what weight to give non-controlling opinion).

17

### B. The ALJ's determination not to include memory and concentration deficits in the RFC is supported by substantial evidence.

Moore argues that the ALJ failed to account for a memory and concentration deficit in the RFC and, therefore, the RFC is not supported by substantial evidence. Doc. 13, p. 20. Moore states that the psychiatric treatment notes provide substantial evidence of such a deficit. Id. The ALJ determined that the record supported a finding of only mild limitations in the area of concentration, persistence, and pace.[5] Tr. 13. He noted that Moore reported that she is able to pay attention for two hours, follows instructions well, and finishes tasks that she starts. Id. As discussed below, the ALJ's decision not to include memory loss or concentration deficits in the RFC is supported by substantial evidence.

**Memory Loss.** Moore testified that she has had problems with memory loss for the last two years, i.e., around 2010 through 2012. Tr. 41. As noted in the previous section, the treatment notes only reflect one instance where Moore raised memory problems.[6] Tr. 970. Additionally, as found above, the ALJ appropriately discounted the opinions of Drs. Khan and Ford determining that Moore had limitations with regard to her memory. Tr. 970. In fact, as noted in the previous section, Dr. Ford's opinion was internally inconsistent on the memory assessment issue because, although he opined that Moore had memory limitations on the second page of his opinion, on the first page he stated that Moore displayed "[n]o major cognitive problems" with concentration or memory and had "no thinking disorder." Tr. 799.

---

[5] The ALJ also determined that Moore exhibited only mild limitations in her activities of daily living and social functioning. Tr. 13. He noted that she was able to use transportation, shop, pay bills, handle accounts, watch television and movies, and read. Id.

[6] A February 13, 2012, treatment note reflects that Moore "will be working with A.J. Brown (coach) to help her develop new memory connections. She works with a partner to help her learn new cognitive skills. The program lasts about 3 hours every Tuesday and Thursday." Tr. 970. A February 27, 2012, PPBH treatment notes states that Moore is part of a weekly group that is designed to help with "memory, social skills and overall development." Tr. 965. There is no other information in the record about this group.

18

Moore's activities of daily living do not reflect any problems with memory loss.  In fact, Moore reported she follows instructions very well and finishes what she starts.  Tr. 185.

**Concentration Deficits.**   Upon starting treatment at PPBH in September 2009, Moore complained of difficulties with concentration.  Tr. 371.  In December 2010, Moore again complained of difficulty with concentration, though she stated that she thought this problem was due to the death of her son.  Tr. 677.  Later, on June 28, 2011 and September 6, 2011 Moore continued to report difficulties with concentration.  Doc. 13, p. 21; Tr. 1005, 1011, 1017.  However, Moore also reported on September 16, 2011, and October 18, 2011, that, after a change in medication, she had better concentration and fewer racing thoughts.  Tr.983.  In November and December 2011, Moore reported no cognitive impairments.  Tr. 979.  In January 2012, it was reported that Moore had appropriate thought processing of information.  Tr. 972.  Treatment notes since September 2011, have reported no further complaints relative to concentration problems.

Accordingly, the ALJ's decision not to include memory loss or concentration deficits in the RFC is supported by substantial evidence.

## VII.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

Dated:  July 10, 2014

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).